**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| IOVANCE BIOTHERAPEUTICS, INC. F/K/A LION BIOTECHNOLOGIES, INC., a Delaware Corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO, an Illinois Not-For-Profit Corporation,<br><br>　　　　　　Defendant. | Case No.:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Iovance Biotherapeutics, Inc. f/k/a Lion Biotechnologies, Inc. ("Iovance" or "Plaintiff"), submits this Complaint against Defendant The University of Chicago ("Chicago" or "Defendant") and alleges as follows:

**NATURE OF THE ACTION**

1. This case concerns the allocation of responsibility for a series of adverse events suffered by a participant in clinical trial testing of LN-145 (the "Study Drug") sponsored by Plaintiff Iovance Biotherapeutics, Inc. and conducted by Defendant The University of Chicago.

2. On information and belief, Chicago was negligent in its treatment of its clinical trial patient, ignoring early warning signs which should have led Chicago to discontinue the patient's participation in the study.

3. As a result, the patient suffered a series of wholly preventable adverse events, which ultimately resulted in the patient's untimely passing.

4. Plaintiff contends that, because the patient's injuries were caused by a combination of Chicago's negligence and adverse reactions to drugs other than the Study Drug, Chicago is

17039.7:11731592.3

solely liable for the Patient's injuries under the Clinical Trial Research Agreement between the Parties.

5. On the other hand, Chicago contends that Iovance is liable for the Patient's injuries under the Clinical Trial Research Agreement.

## PARTIES

6. Iovance is a Delaware corporation, with its principal place of business at 825 Industrial Road, Suite 100, San Carlos, California. Iovance was formerly known as Lion Biotechnologies, Inc., which was a Nevada corporation, with its principal place of business in San Carlos, California.

7. Defendant Chicago is a Not for Profit Corporation organized and existing under the laws of Illinois, with its Principal Place of Business in Chicago, Illinois.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and complete diversity of citizenship exists.

9. This Court has personal jurisdiction over Chicago by virtue of the Clinical Trial Research Agreement between the Parties, through which Chicago consented to the jurisdiction of this Court.

10. Specifically, on October 16, 2017, the Parties entered into a Clinical Trial Research Agreement ("CTA") through which Chicago agreed to perform clinical trial research of Iovance's study drug, LN-145. Section 21.A of the CTA contains a venue provision, which provides that: "This Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, United States of America, without giving effect to any conflict of laws provisions. The

Parties agree that *any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement may be brought in a United States District Court in the State of Delaware*, or if such court does not accept jurisdiction or will not accept jurisdiction, in any court of general jurisdiction in the State of Delaware."

11. The present action arises out of the interpretation, construction, performance, or breach of the CTA.

12. Venue is proper under 28 U.S.C. § 1391(b)(3), because Chicago is subject to the personal jurisdiction of this Court with respect to the present action.

## FACTUAL BACKGROUND

13. Iovance is a commercial-stage biotechnology company that focuses on developing and commercializing cancer immunotherapy products. Iovance investigates the safety and efficacy of its products by, *inter alia*, conducting clinical trials.

14. Iovance sponsored a Phase 2 human clinical trial conducted at Chicago, titled "A Phase 2 Study to Evaluate the Safety, Tolerability and Efficacy of Cell Transfer Therapy Using Autologous Tumor Infiltrating Lymphocytes (LN-145) followed by IL-2 in Patients with Recurrent and/or Metastatic Cervical Carcinoma," C-145-04 (the "Study").

15. On October 16, 2017, Chicago and Iovance entered into the CTA, for Iovance's "multicenter clinical trial (the 'Clinical Trial') of LN-145 (the 'Study Drug')."

16. The CTA narrowly defined the "Study Drug" as LN-145. As used in the CTA, the term "Study Drug" does not encompass other drug substances involved in the Study, almost all of which were manufactured by entities other than Iovance.

17. Iovance and Chicago proceeded to conduct the Study pursuant to the CTA.

18. Chicago enrolled one patient ("Patient") in the Study in early 2022. Patient began

treatment in accordance with the study protocol shortly thereafter.

19. Patient was administered the first dose of a drug substance other than the Study Drug ("non-study drug") and received infusions of the Study Drug several weeks later. The non-study drug was not manufactured by Iovance.

20. One week later, Patient presented to Chicago with symptoms of an adverse reaction, which Chicago wrote off to "pseudo progression," without notifying Iovance or performing a full infectious disease workup. Chicago proceeded to administer at least one more dose of non-study drug to Patient in an even larger dosage.

21. Chicago was negligent in its decision to proceed with non-study drug treatment without conducting further testing, let alone without consulting with Iovance, despite Chicago's knowledge that Patient presented with adverse symptoms shortly after receiving the first dose of non-study drug.

22. Specifically, the package insert for non-study drug warned to monitor patients closely for signs of an adverse reaction like the ones experienced by Patient.

23. After receiving the subsequent dose(s) of non-study drug, Patient returned to Chicago with severe adverse symptoms. At this time, Chicago performed a full infectious disease workup and discovered that Patient's exposure to non-study drug had resulted in severe adverse reactions, and permanently discontinued non-study drug for Patient.

24. Patient's adverse reactions were treated with another non-study drug, to which the Patient suffered further adverse reactions that were not attributable to the Study Drug or the first non-study drug.

25. Ultimately, the Patient passed away due to complications caused by the non-study drugs.

26. On January 18, 2023, Chicago submitted an invoice to Iovance for $2,022,556.63 for treatment of Patient's adverse event from September to December 2022. Then in May 2023, Chicago submitted a second invoice to Iovance for $280,987.31 for treatment of Patient's adverse event during a subsequent admission.

27. On August 19, 2024, Chicago sent a letter to Iovance demanding payment of the invoices in accordance with the CTA.

28. On September 5, 2024, Iovance sent a letter to Chicago in response to Chicago's demand letter denying any obligation to pay the invoices under the CTA.

29. Iovance has not tendered payment for the invoices to Chicago.

30. Chicago asserts that Iovance is required to reimburse it for the reasonable and necessary medical expenses incurred by Patient under Section 13.A of the CTA. Section 13.A of the CTA provides in relevant part that: "Sponsor shall be responsible for reasonable and necessary medical expenses incurred by a patient enrolled in the Study as a direct result of the diagnosis and treatment of any patient injury, illness, complication or adverse event *caused by the Study Drug* following its administration or use in accordance with the Protocol, or any procedure required by the Protocol, except to the extent such expenses are attributable to: (i) the *negligence or misconduct of any agent, employee, officer, director, or contractor of Institution*, or (ii) Institution's failure to follow the Protocol."

31. Section 17.A of the CTA provides that "Sponsor shall indemnify, defend and hold harmless, Institution and its employees … from and against any and all liability, damage, cost, loss or expense (including reasonable attorney's fees and expenses of litigation) or any claims, demands, or judgments which are made against them by a third party arising directly from: (i) *the administration of the Study Drug* or any comparator drug or placebo in accordance with the

Protocol and this Agreement, (ii) **any procedures required by the Protocol or Sponsor's written instructions** …" (emphasis added).

32. Section 17.B includes a similar carve-back to Section 13, providing that "Sponsor shall have no indemnification obligation to the extent the loss or damage is resulting directly from," *inter alia*, the Institution's failure to "adhere to the terms and provisions of the Protocol … or Sponsor's written instructions relative to the administration and use of any drug substances involved in the Study, including the Study Drug, any comparative drug and any placebo" and/or "negligence or willful misconduct by Principal Investigator, Institution, its trustees, officers, agents or employees related to the performance of research under this Agreement."

33. Pursuant to Section 17.D of the CTA, Chicago agrees to indemnify Iovance for claims arising from any breach of the CTA by Chicago and/or Chicago's negligence.

34. After the Parties exchanged letters, Iovance entered into extended negotiations with Chicago, in a good faith attempt to resolve its dispute about Chicago's entitlement to payment under the CTA, including participation in a mediation with Chicago on September 23, 2025. Unfortunately, the Parties' efforts to negotiate a settlement have recently stalled, prompting the present action.

### FIRST CAUSE OF ACTION
### (Declaratory Relief Regarding Clinical Trial Research Agreement against The University of Chicago)

35. Iovance incorporates and realleges by reference all paragraphs above as though fully set forth herein.

36. An actual, real and substantial, controversy has now arisen between Iovance, on the one hand, and Chicago, on the other hand, concerning whether Iovance is required to reimburse Chicago for the treatment of Patient's bodily injuries under the CTA.

37. Iovance contends that the CTA narrowly defines the "Study Drug" as LN-145, and thus, Sections 13.A and 17.A do not encompass adverse reactions to non-study drugs. The CTA does **not** apportion liability for adverse events "caused by *[drug substances involved in the Study]* following [their] administration or use in accordance with the Protocol," though the Parties could have easily specified such adverse events. Iovance further contends that the phrase "any procedure required by the Protocol" refers to surgical and medical operations required by the Protocol and does not extend to adverse reactions to drug substances involved in the Study. Any other interpretation would render the phrase "caused by the Study Drug following its administration or use in accordance with the Protocol" superfluous.

38. Iovance further contends that the phrase "reasonable and necessary medical expenses" in Section 13.A of the CTA only encompasses actual medical expenses, and does not encompass overhead.

39. On information and belief, Chicago disputes all of Iovance's contentions.

40. Accordingly, Chicago has demanded that Iovance reimburse Chicago for (what Chicago contends were) Patient's reasonable and necessary medical expenses of $2,303,543.94 (an amount which includes $460,708.79 in overhead fees). Chicago further contends that Iovance breached the CTA by refusing to reimburse Chicago for these medical expenses.

41. On information and belief, Chicago further claims that Iovance is continuing to incur prejudgment interest on the invoice amounts. Thus, it is critical to resolve the questions concerning the interpretation of the CTA as expeditiously as possible.

42. It is further necessary that the Parties determine their rights and responsibilities under the CTA in the event of a lawsuit brought by Patient's family against one or both Parties.

43. Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 and 10 Del. C. §

6501.

44. Iovance thus requests a declaration by the Court that Iovance's proposed constructions of Sections 13.A and 17.A of the CTA are valid and declaring that "reasonable and necessary medical expenses" encompasses only actual medical expenses and does not encompass overhead.

## SECOND CAUSE OF ACTION
**(Declaratory Relief Regarding Clinical Trial Research Agreement against The University of Chicago)**

45. Iovance incorporates and realleges by reference all paragraphs above as though fully set forth herein.

46. An actual, real and substantial, controversy has now arisen between Iovance, on the one hand, and Chicago, on the other hand, concerning whether Iovance is required to reimburse Chicago for the treatment of Patient's bodily injuries under the CTA.

47. Iovance contends that Iovance has no responsibility for Patient's injuries, because they were caused by non-study drugs.

48. On information and belief, Chicago disputes Iovance's contentions.

49. Accordingly, Chicago has demanded that Iovance reimburse Chicago for (what Chicago contends were) Patient's reasonable and necessary medical expenses of $2,303,543.94. Chicago further contends that Iovance breached the CTA by refusing to reimburse Chicago for these medical expenses.

50. On information and belief, Chicago further claims that Iovance is continuing to incur prejudgment interest on the invoice amounts. Thus, it is critical to resolve the questions concerning whether Iovance is required to reimburse Chicago for the treatment of Patient's bodily injuries as expeditiously as possible.

51. It is further necessary that the Parties determine their rights and responsibilities under the CTA in the event of a lawsuit brought by Patient's family against one or both Parties.

52. Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 and 10 Del. C. § 6501.

53. Iovance thus requests a declaration by the Court that Iovance has no responsibility for Patient's medical expenses under Section 13.A of the CTA and no obligation to indemnify Chicago under Section 17.A of the CTA, because Patient's injuries are attributable to drugs other than the Study Drug (LN-145).

### THIRD CAUSE OF ACTION
**(Declaratory Relief Regarding Clinical Trial Research Agreement against The University of Chicago)**

54. Iovance incorporates and realleges by reference all paragraphs above as though fully set forth herein.

55. An actual, real and substantial, controversy has now arisen between Iovance, on the one hand, and Chicago, on the other hand, concerning whether Iovance is required to reimburse Chicago for the treatment of Patient's bodily injuries under the CTA.

56. Iovance contends that Patient's bodily injuries are attributable to Chicago's negligence in failing to follow the directions provided by the package insert for non-study drug and continuing to administer non-study drug in higher dosages without consulting Iovance, even after there were signs that Patient was having an adverse reactions to non-study drug which the package insert warned to watch for. Accordingly, Iovance is not responsible for Patient's medical expenses

57. On information and belief, Chicago disputes Iovance's contentions.

58. Accordingly, Chicago has demanded that Iovance reimburse Chicago for (what

9

Chicago contends were) Patient's reasonable and necessary medical expenses of $2,303,543.94. Chicago further contends that Iovance breached the CTA by refusing to reimburse Chicago for these medical expenses.

59. On information and belief, Chicago further claims that Iovance is continuing to incur prejudgment interest on the invoice amounts. Thus, it is critical to resolve the questions concerning whether Iovance is required to reimburse Chicago for the treatment of Patient's bodily injuries as expeditiously as possible.

60. It is further necessary that the Parties determine their rights and responsibilities under the CTA in the event of a lawsuit brought by Patient's family against one or both Parties.

61. Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 and 10 Del. C. § 6501.

62. Iovance thus requests a declaration by the Court (1) confirming that Iovance has no responsibility for Patient's medical expenses under Section 13.A of the CTA and no obligation to indemnify Chicago under Section 17.A of the CTA, because Patient's injuries are attributable to Chicago's negligence; and (2) confirming that Chicago has an obligation to indemnify Iovance under Section 17.D of the CTA, because Patient's injuries are attributable to Chicago's negligence.

## PRAYER FOR RELIEF

WHEREFORE, Iovance prays for the following judgment against Chicago as follows:

A. An entry of judgment declaring that Iovance has no responsibility for patient injuries, illnesses, complications or adverse events caused by drug substances involved in the Study, other than the Study Drug (LN-145) itself under Section 13.A and Section 17.A of the CTA;

B. An entry of judgment declaring that Iovance's liability to Chicago is in any event limited to the reasonable and necessary medical expenses incurred by the clinical trial participants,

and does not include Chicago's overhead fees;

  C. An entry of judgment declaring that Iovance has no responsibility for Patient's medical expenses under Section 13.A of the CTA and no obligation to indemnify Chicago under Section 17.A of the CTA, because Patient's injuries were not attributable to the Study Drug (LN-145) itself;

  D. An entry of judgment declaring that Iovance has no responsibility for Patient's medical expenses under Section 13.A of the CTA and no obligation to indemnify Chicago under Section 17.A of the CTA, because Patient's injuries were attributable to Chicago's negligence;

  E. An entry of judgment declaring that Chicago has an obligation to indemnify Iovance under Section 17.D of the CTA, because Patient's injuries were attributable to Chicago's negligence;

  F. An award of Iovance's reasonable attorneys' fees, costs, and expenses incurred in this action; and

  G. An award of such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Iovance hereby demands a jury trial as to all matters so triable.

|  |  |
|---|---|
|  | **MORRIS JAMES LLP** |
| **OF COUNSEL:** | /s/ K. Tyler O'Connell<br>K. Tyler O'Connell (#4514)<br>Albert J. Carroll (#5316)<br>Ryan T. Keating (#5504) |
| Robert M. Waxman<br>Elliot Z. Chen<br>ERVIN COHEN & JESSUP LLP<br>9401 Wilshire Boulevard, Twelfth Floor<br>Beverly Hills, California 90212-2974<br>(310) 273-6333 | Sarah M. Ennis (#5745)<br>3205 Avenue North Boulevard, Suite 100<br>Wilmington, DE 19803<br>(302) 888-6800<br>toconnell@morrisjames.com<br>acarroll@morrisjames.com<br>rkeating@morrisjames.com<br>sennis@morrisjames.com |
|  | *Attorneys for Plaintiff Iovance Biotherapeutics, Inc.* |
| Dated:  December 23, 2025 |  |